**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x

VALENTINA SOLOMATINA,

                                Plaintiff,

    -against-

MICHAEL MIKELIC, ET AL.,

                                Defendants.

--------------------------------------------------------------------x

1:16-cv-02446 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Valentina Solomatina brings this action alleging breach of contract, constructive trust, conversion, unjust enrichment, and breach of fiduciary duty against former son-in-law Michael Mikelic, King Penguin Properties, LLC, King Penguin Opportunity Fund, LLC, King Penguin Opportunity Fund II, LLC, and KPP Managing Member, LLC (collectively "Defendants") for Defendants' alleged failure to repay Plaintiff for her loans and investments in connection with various real estate ventures. Second Am. Compl. ("SAC"), ECF No. 43. Defendants now move for summary judgment. ECF No. 59. After review of the record, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. *Id.* Defendants are granted summary judgment as to causes of action three through nine, eleven, twelve, fifteen, sixteen, twenty-one, twenty-four, and twenty-six; Defendant Mikelic is also granted summary judgment as to causes of action nineteen and twenty; and Penguin Opportunity Fund II is granted summary judgment as to causes of action twenty-two and twenty-three.

## BACKGROUND

The following facts are drawn from (a) Defendants' Rule 56.1 Statement of Material Undisputed Facts, Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Br.") Ex. 1, ECF No. 62-1; (b) Plaintiff's Response to Defendants' Statement of Material Undisputed Facts, Pl.'s Resp. Defs.'

Rule 56.1 Statement ("Pl.'s Resp."), ECF No. 66; and (c) Defendants' Response to Plaintiff's Statement of Material Facts, Defs.' Resp. Pl.'s Rule 51.1 Statement ("Defs.' Resp."), ECF No. 74. Unless otherwise noted, the facts are undisputed.

Plaintiff is the mother-in-law of Defendant Michael Mikelic. Defs.' Br. Ex. 1 ¶ 1, ECF No. 62-1. Defendant Mikelic married Plaintiff's daughter Olga Solmatina ("Olga") in 2005, but Mikelic and Olga separated in 2013 and began divorce proceedings in 2014. *Id.* ¶¶ 3, 14-15. Plaintiff alleges that between 2005 and 2013, Plaintiff, pursuant to several oral agreements, loaned Defendant Mikelic approximately $2 million to purchase real estate and for investments, which was never paid back. Pl.'s Resp. ¶¶ 67-90, ECF No. 66. Plaintiff requested that Defendant repay these loans with interest by 2014 because Plaintiff and her husband planned to move to New York at that time and needed the returns from Plaintiff's investments to finance the purchase of a home. *Id.* Defendants, however, contend that there were no oral agreements between the parties—any of Plaintiff's funds used in the relevant transactions were at Olga's behest or were gifts. Defs.' Resp. 6-7, ECF No. 74. The relevant transactions are outlined below followed by a discussion of additional material facts.[1]

## I. **Real Property Investments**

### A. **Wheelock Property**

On April 26, 2005, Defendant Mikelic and Olga purchased property located at 24 Wheelock Walk, East Hampton, New York. Defs.' Br. Ex. 1 ¶ 30, ECF No. 62-1. The purchase

---

[1] The Court will not describe facts surrounding the Three Mile Harbor Property because Plaintiff indicated that she is "not seeking damages with respect to the Three Mile Harbor Property." Pl.'s Resp. 4-5, ECF No. 66. Based on this concession and because Plaintiff does not oppose Defendants' argument regarding the Three Mile Harbor Property, Defendants are granted summary judgment on causes of action five through eight of the Complaint. *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified*, No. 01-CV-5750 (ILG), 2003 WL 21781941 (E.D.N.Y. July 29, 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)).

price of the Wheelock Property was $860,000, which was financed, in part, by a $688,000 mortgage loan from CitiMortgage, Inc. *Id.* at ¶¶ 32-33. Defendants claim that Defendant Mikelic and Olga paid the remaining purchase price from checks remitted on a bank account held in Olga's name; Plaintiff disputes this characterization and instead claims that Plaintiff agreed to loan Defendant Mikelic money at the same interest rate as her Russian savings account to complete the purchase of the Wheelock Property. *Id.* at ¶ 34; Pl.'s Resp. ¶ 34, ECF No. 66. Repayment of said loan was allegedly due no later than 2014. *Id.* Plaintiff further claims that the money was transferred to Defendant via Olga's U.S. checking account and that in Defendant Mikelic's sworn Statement of Net Worth, Defendant stated that the source of funds to acquire the Wheelock Property was from "Olga mother and husband." *Id.* at ¶ 35; Decl. Jonathan M. Sabin Supp. Pl.'s Opp. Defs.' Mot. Summ. J. ("Sabin Decl.") Ex. 6 at 03491, ECF No. 63.

### B. Storage Units

In 2006, Defendant Mikelic allegedly informed Plaintiff that the purchase of Storage Units located on 120 Riverside Boulevard, New York, New York would be a profitable investment. Pl.'s Resp. ¶ 48, ECF No. 66. Plaintiff allegedly loaned Defendant $505,728 for the purchase of twenty-four storage units and did so via checks in Plaintiff's name payable to Bryan Cave, LLP, who was the escrow agent for the transaction. *Id.* at ¶¶ 49-50. Defendant allegedly sold the units for profit but did not provide any return to Plaintiff. *Id.* at ¶ 52. Defendants dispute these allegations and claim that (1) Defendant Mikelic did not have any conversations with Plaintiff regarding the profitability of the storage units; (2) that Plaintiff did not loan any Defendants the funds for purchasing the units; (3) that Olga signed checks for a certain number of storage units; (4) the checks were drawn on a checking account maintained in name of

Plaintiff in the care of Olga; and (5) that Defendants were not party to any agreement with Plaintiff to repay any money. Defs.' Resp. ¶¶ 48-51, ECF No. 74.

### C. Trump Baja Property

Also in 2006, Defendant Mikelic allegedly told Plaintiff he wanted to purchase residential property located at Trump Ocean Resort in Baja, Mexico through King Penguin Properties, LLC. Pl.'s Resp. ¶ 53, ECF No. 66. King Penguin Properties, LLC is a New York limited liability corporation organized in 2006 of which Defendant Mikelic and Olga are each fifty percent members. Defs.' Br. Ex. 1 ¶ 4. Plaintiff allegedly loaned Defendant $151,400 for his deposit for the purchase of the Trump Baja Property directly via checks in her name payable to "Land of America." Pl.'s Resp. ¶¶ 54-55, ECF No. 66. Because of a court settlement, King Penguin Properties received a refund for its deposit on the property in the amount of $163,464.03 yet Plaintiff alleges none of the funds were returned to Plaintiff. *Id.* at ¶¶ 56-57. Defendants disagree with Plaintiff's version of events and assert that Defendant Mikelic (1) had no conversations with Plaintiff regarding the Trump Baja Property; (2) was not a party to any loan agreement with Plaintiff which required repayment of the money; and (3) that the money for the deposit came from Olga who signed Plaintiff's name to checks drawn on an account in Plaintiff's name. Defs.' Resp. ¶¶ 53-57.

### II. Fifth Avenue Apartment Funds & Windham Property Purchase

In January 2013, Plaintiff and her husband travelled to New York City to view potential apartments to purchase. Pl.'s Resp. ¶ 35, ECF No. 66. Plaintiff allegedly identified an apartment located at 1280 Fifth Avenue that she wanted to buy. *Id.* Defendant Mikelic allegedly claimed that he did not have the necessary funds to put a down payment on the apartment and so Plaintiff loaned Defendant $393,000, which Plaintiff asserts was transferred to Defendant via

4

Olga's checking account in two separate installments of $133,000 and $260,000 on March 19, 2013 and May 6, 2013 respectively. *Id.* Plaintiff alleges that Defendant did not use the money for a down payment on the Fifth Avenue Apartment and instead used the money to purchase and improve a ski house located in Windham, New York and on other unrelated purchases. *Id.* Plaintiff notes that in an e-mail between Defendant Mikelic and Olga dated July 31, 2013, Defendant stated "Tell [Plaintiff] we love her for the ski house." *Id.* Like the other alleged loans, this loan was repayable no later than 2014 and Plaintiff never stated the money was a gift.

Defendants on the other hand claim that the $393,000 belonged to Olga and came from her back account of which she was the sole owner: at no time did Plaintiff loan or provide Defendant with the $393,000 to purchase an apartment located on Fifth Avenue. Defs.' Br. Ex. 1 ¶ 40-41, ECF No. 62-1. Defendants claim that the $133,000 from Olga's account was paid to an attorney acting as an escrow agent as a deposit for an apartment located at 1595 Lexington Avenue, New York, New York, which Defendant Mikelic and Olga sought to purchase. *Id.* at ¶¶ 40-42. Ultimately, the Lexington Avenue apartment was not purchased and the $133,000 was returned to Olga's account, at which point Olga wrote a check to Defendant Mikelic for $260,000 that Defendant used to purchase and improve a home in Windham, New York that was titled in both Defendant and Olga's names. *Id.* at ¶ 43.

### III. <u>King Penguin Properties Loan & Penguin Opportunity Fund Investment</u>

In 2008, Defendant Mikelic asked Plaintiff if she would serve as a Vice President of the King Penguin Opportunity Fund ("Opportunity Fund"), which is a Delaware limited liability corporation formed in 2009 to invest in properties located in the New York metropolitan area. Pl.'s Resp. ¶ 58, ECF No. 66; Defs.' Br. Ex. 1 ¶ 5, ECF No. 62-1. Plaintiff declined Defendant's offer, but Plaintiff alleges that Defendant asked Plaintiff to invest in the Opportunity Fund and

informed her that Plaintiff would receive 10% interest on her investment.  Pl.'s Resp. ¶¶ 58-61, ECF No. 66.  Plaintiff claims she loaned approximately $648,845 to King Penguin Properties and invested approximately $100,000 with the Opportunity Fund in 2009, which was never repaid at 10% interest as allegedly promised.  *Id*. at ¶ 62; 66.  Plaintiff supports her claims with bank statements showing transfers made to King Penguin Properties over several years, as well as $100,000 transferred in four installments in November 2009 allegedly for the purpose of investing in the Opportunity Fund.  Decl. of Valentina Solomatina ¶ 10, Ex. 4, ECF Nos. 64, 64-4.

Plaintiff also claims that Defendant (1) did not provide Plaintiff with the subscription or operating agreement that all investors in the Opportunity Fund were required to sign, which disclosed material risks associated with an investment in the Fund; and (2) did not orally or otherwise inform her of any materials risks associated with her investment.  *Id*. at ¶¶ 63-65.  According to Plaintiff, Defendant Mikelic had a fiduciary duty to investors to provide this information because he was a co-owner of King Penguin Properties and KPP Managing Member, LLC ("KPP"). SAC ¶ 249, ECF No. 43.  KPP is a Delaware limited liability corporation organized in 2009 that Mikelic has a seventy-five percent membership interest in and which is a managing member of the Opportunity Fund.  Defs. Br. Ex. 1 ¶¶ 6-7, ECF No. 62-1.

Conversely, Defendant claims that he asked Olga if Olga and her parents would invest in the Opportunity Fund, and that they all declined after Olga spoke to her parents via telephone—a conversation for which Defendant was not present.  Defs.' Resp. ¶ 60, ECF No. 74.  Defendant asserts that he never spoke to Plaintiff directly about investing in the fund and did not inform her that he would return 10% interest on any investment in the Opportunity Fund or loan to King

Penguin Properties. *Id.* at ¶ 61. As Plaintiff was allegedly never an investor in the Opportunity Fund,[2] Defendant had no reason to provide her with the subscription agreement.

## IV.    Schedules

Plaintiff lastly asserts that Defendant Mikelic prepared three schedules that outlined Plaintiff's loans and investments to Defendant. Pl. Resp. ¶ 68, ECF No. 66. The schedules were entitled "Gift Money for Mama Vala," (hereinafter "Mama Vala Schedule") "Storage Unit Schedule," and "King Penguin Properties Usage of Open Credit Line from Valentina Solomatina" (hereinafter "King Penguin Schedule"). Defs.' Resp. ¶ 68, ECF No. 74. Plaintiff claims that Olga added handwritten notes to each schedule after they were prepared by Mikelic so that Plaintiff would understand the contents. Pl. Resp. ¶ 69, ECF No. 69. Defendant disputes these claims and instead asserts that (1) Defendant prepared the schedules with and at the insistence of Olga; (2) the schedules do not contain language indicating any money was a loan from or investment by Plaintiff; (3) Defendant did not transmit any of the schedules to Plaintiff; and (4) the handwritten notes were made by Olga outside the presence of Defendant—Defendant does not read or write Russian and did not assent to or authorize the notations. Defs.' Resp. ¶¶ 68-69, ECF No. 74.

As to each individual schedule, Plaintiff notes that the Mama Vala Schedule, which was prepared in 2013, includes the dates, amounts, and descriptions of the loans for the Wheelock Property, the Trump Baja Property, and the Storage Units. Pl.'s Resp. ¶ 70-71, ECF No. 66. Mama Vala was a nickname for Plaintiff. *Id.* at ¶ 72. The schedule was titled "Gift Money from

---

[2] Plaintiff named Penguin Opportunity Fund II, LLC in the SAC as a Defendant, but alleged no facts regarding any investments or loans to this fund in Plaintiff's Response to Defendants' Local Rule 56.1 Statement, nor does Plaintiff respond to Defendants' argument that this Defendant is entitled to summary judgment. As such, causes of action twenty-two and twenty-three against Opportunity Fund II are dismissed as abandoned. *Taylor*, 269 F. Supp. 2d at 75; *Douglas*, 21 F. Supp. 2d at 393.

Mama Vala" because Olga told Defendant to title it as such. *Id*. at 75. Defendant takes issue with Plaintiff's characterization of the money reflected in this schedule as loans because the schedule does not denominate the money in such terms and because he was not privy to any loan agreements with Plaintiff for the purchase of the Wheelock Property, the Trump Baja Property, or the Storage Units. Defs.' Resp. ¶ 70, ECF No. 74.

The Storage Unit Schedules, which were created in 2010, list the unit numbers, size of the units, the purchase prices of the units, the dates of purchase, and the sale prices. Pl.'s Resp. ¶ 78-79, ECF No. 66. On one of these schedules Defendant Mikelic included a handwritten note indicating that eight storage units were paid for by him an Olga, but Mikelic did not include any note for the remaining twenty-four units. *Id*. at ¶ 80. Plaintiff alleges that Olga included a handwritten note to indicate the remaining twenty-four units were paid for by Plaintiff. *Id*. at 81. Defendant, again, asserts that the notes in Russian were not prepared by him nor did he authorize or consent to the notations. Defs. Resp. ¶ 82, ECF No. 74.

Finally, Plaintiff asserts that the King Penguin Schedules list the date, amount, annual interest rate, interest due, maximum note value, days outstanding, total due for a substantial number of Plaintiff's loans, and has Olga's handwritten notes to Plaintiff. Pl.'s Resp. ¶ 84, ECF No. 66. Like the other schedules, Defendants assert that they were not party to any loan agreements, that Defendant Mikelic created the schedule with Olga at her insistence, and that Mikelic did not authorize or consent to Olga's Russian notes. Defs.' Resp. ¶¶ 84, 87.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See*

*Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of

material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal citations and quotation marks omitted).

## ANALYSIS

### I.     <u>Statute of Frauds</u>

Defendants first argue that the statute of frauds bars all claims in this action because (1) the alleged loans for the Wheelock Property, the Storage Units, the Trump Baja Property, the loan to King Penguin Properties,[3] and the investment in the Opportunity Fund were pursuant to oral agreements which could be not be performed within one year; and (2) the alleged loan for the down payment of the Fifth Avenue Apartment, which was to be held in trust for Plaintiff was not in writing. Defendants' first argument in unavailing, but summary judgment as to Plaintiff's ninth cause of action for breach of contract in connection with the Fifth Avenue Apartment Funds is granted.

#### A.     § 5-701

New York's General Obligations Law § 5-701 states that "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . if such agreement . . . [b]y its terms is not to be performed within one year . . . ." N.Y. Gen. Oblig. Law § 5-701(a)(1). "This provision of the

---

[3] The Court notes that in the Complaint, the twenty-fifth cause of action is framed as a breach of contract against Defendant Mikelic in connection with $648,845 Plaintiff allegedly provided to Mikelic to use "for payments for Solomatina's purchase of the Fifth Avenue Property." SAC ¶ 277, ECF No. 43. In Plaintiff's Rule 56.1 statement, however, Plaintiff asserts that "Plaintiff loaned approximately $648,845 to King Penguin Properties (at ten percent interest)" with no mention of the Fifth Avenue Apartment. Pl.'s Resp. ¶ 62, ECF No. 66. This is also the case in Plaintiff's opposition generally. Consequently, the Court will treat the twenty-fifth cause of action as a claim for breach of contract against Mikelic in connection with Plaintiff's loan to King Penguin Properties rather than a breach of contract in connection with the Fifth Avenue Property.

Statute of Frauds encompasses 'only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year.'" *Guilbert v. Gardner*, 480 F.3d 140, 151 (2d Cir. 2007) (citing *Cron v. Hargro Fabrics*, Inc., 91 N.Y.2d 362 (1998)). Taking the evidence in the light most favorable to Plaintiff, the Court holds that (1) it was possible for Defendants to repay the alleged loans for the Wheelock Property, Storage Units, and the Trump Baja Property, and the loan to King Penguin Properties within one year; and (2) the statute of frauds does not apply to the investment in the Opportunity Fund.

Parties agree that Plaintiff sought repayment of her alleged real property loans by 2014, but disagree as to whether repayment could have been completed within a year. Defendants argue that prepayment of Plaintiff's loans within one year would not constitute performance of the terms of the alleged oral agreements because the agreements did not explicitly authorize early payment and there is no common law right to prepayment. Defs.' Reply. Supp. Mot. Summ. J. ("Defs.' Reply") 6-7, ECF No. 71; *see, e.g., Friends Realty Assocs., LLC v. Wells Fargo Bank, N.A.P.*, 40 A.D.3d 287 (1st Dep't 2007); *Missouri, K. & T. Ry. Co. v. Union Tr. Co.*, 156 N.Y. 592, 599 (1898).

*Friends Realty* and *Missouri, K. & T. Ry. Co.*, however, stand for the proposition that because there is no right to prepay, a debtor cannot *compel* a creditor to accept payment prior to the maturity date of a loan. These cases do not hold that it is unlawful for a debtor to prepay loan where the creditor does not object to receiving payment. There is no evidence indicating Plaintiff would be unwilling to accept payment prior to 2014 and within one year of each of the alleged agreements. Thus, the statute of frauds does not bar Plaintiff's breach of contract claims as to the Wheelock Property, the Storage Units, the Trump Baja Property, and King Penguin Properties.

As to the investment in Opportunity Fund, Defendants broadly argue that any claims based on Plaintiff's alleged investment are barred by N.Y. Gen. Oblig. Law § 5-701 because the funds were to allegedly be held in trust for Plaintiff's benefit until January 1, 2014—more than a year after the alleged oral agreement. Defs.' Br. 14-15, ECF No. 62. Plaintiff, however, correctly notes that the investment in the Opportunity Fund falls outside the statute of frauds because it was an agreement for the sale and purchase of a security, which need not be in writing nor be capable of being performed within one year to be enforceable. Pl.'s Opp. Defs.' Mot. Summ. J. ("Pl.'s Br.") 12, ECF No. 67; N.Y. U.C.C. Law § 8-113; *accord Micromat Co. v. Catskill Mountain Brewing Co.*, No. 1:10-CV-508 MAD/RFT, 2012 WL 1898846, at *4 (N.D.N.Y. May 23, 2012). Accordingly, the statute of frauds does not bar Plaintiff's twenty-first cause of action for breach of fiduciary duty regarding the Opportunity Fund against Defendant Mikelic.

## B.   § 5-703

Conversely, the statute of frauds does bar Plaintiff's ninth cause of action for breach of contract in connection with the Fifth Avenue Apartment Funds. New York's General Obligations Law § 5-703, which governs any agreement for the creation of an estate or interest in real property, including property to be held in trust for another, requires the agreement to be in a signed writing. N.Y. Gen. Oblig. Law §§ 5-703(1), (3). One exception to N.Y. Gen. Oblig. Law § 5-703's requirement that agreements to hold property in trust for another must be in writing is the doctrine of partial performance. N.Y. Gen. Oblig. Law § 5-703(4). Partial performance, however, only "overcome[s] the defense of the statute of frauds in an action for specific performance of a contract," i.e., it does not save claims for money damages. *Stainless Broad. Co. v. Clear Channel Broad. Licenses, L.P.*, 58 A.D.3d 1010, 1012 (3d Dep't 2009) (citing

*Tecler v Siwek*, 151 AD2d 813, 815 (3d Dep't 1989)); *accord Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc. v. Aegis Grp. PLC,* 974 F. Supp. 270, 275 (S.D.N.Y. 1997), *aff'd sub nom. Messner Vetere Berger McNamee Schmetterer Euro RSCG, Inc. v. Aegis Grp. PLC,* 186 F.3d 135 (2d Cir. 1999) ("Section 5–703(4) empowers 'courts of equity to compel the specific performance of agreements,' but makes no provision for an award of money damages.") (citing *Mauala v. Milford Mgmt. Corp.*, 559 F. Supp. 1000, 1004 (S.D.N.Y. 1983)).

Unlike the Wheelock Property, the Storage Units, the Trump Baja Property, and King Penguin Properties for which Plaintiff allegedly loaned money to Defendant Mikelic for a return on investment, the Fifth Avenue Funds were purportedly provided for Defendant Mikelic to purchase the Fifth Avenue Apartment and hold it in trust for Plaintiff and her husband. Consequently, § 5-703 governs the alleged Fifth Avenue Apartment agreement, meaning that even if the agreement could be performed within a year it is unenforceable unless it is in writing because Defendant Mikelic was to hold the property in trust for Plaintiff. As the agreement was not in writing, and Plaintiff seeks damages, summary judgment for Defendants is appropriate as to cause of action nine.

Although the statute of frauds bars Plaintiff's breach of contract claims with respect to the Fifth Avenue Apartment Funds, it does not apply to Plaintiff's tenth cause of action: constructive trust for the Fifth Avenue Apartment Funds. New York courts have held that "the statute of frauds is not a defense to a properly pleaded cause of action to impose a constructive trust on real property" because "such a trust, by its very nature, does not require a writing." *Ubriaco v. Martino*, 36 A.D.3d 793, 794 (2d Dep't 2007) (citing *McGrath v. Hilding*, 41 N.Y.2d 625, 628-29 (1977)); *Vanasco v. Angiolelli*, 97 A.D.2d 462, 462 (2d Dep't 1983); *Baron v. Suissa*, 44 Misc. 3d 1229(A), 998 N.Y.S.2d 305 (Sup. Ct. 2014), *aff'd as modified*, 167 A.D.3d

685, 90 N.Y.S.3d 220 (N.Y. App. Div. 2018) (*accord*). Accordingly, the Court also denies Defendants summary judgment based on the statute of frauds on any of Plaintiff's constructive trust claims.

## II.    Source of Funds

Defendants also argue that they are entitled to summary judgment as to all causes of actions associated with the Wheelock Property and Fifth Avenue Funds because undisputed documentary evidence supports the conclusion that the funds for both came from Olga. Defs. Br. 9-10, ECF No. 62. The Court sees otherwise. It is undisputed that the Wheelock Property purchase was financed, in part, with a check remitted from a bank account in the name of Olga; but it is also undisputed that a schedule titled "Gift Money from Mama Vala" was prepared, in part, by Defendant Mikelic, and that the schedule includes the amount and description of funds associated with the Wheelock Property purchase. Similarly, it is undisputed that the Fifth Avenue Funds, which were used to purchase the Windham Property, were remitted from Olga's bank account; but it is also undisputed that Defendant Mikelic sent an e-mail to Olga asking her to thank Plaintiff for the "ski house" the date Defendant and Olga purchased the Windham Property. Assessing these facts in the light most favorable to Plaintiff, the Court holds that there is a material dispute regarding the source of the funds for the Wheelock and Windham Property purchases that should be resolved by a jury at trial.

## III.    Conversion

Defendants' next argue that they are entitled to summary judgment on Plaintiff's conversion claims that are duplicative of Plaintiff's breach of contract claims. The Court agrees. "Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory

right of another in the property." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004). To maintain a conversion claim, a plaintiff must show: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant 'exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Id.* (quotations omitted).

An action for conversion, however, "cannot lie where damages are merely sought for breach of contract." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000); *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) ("It is also settled under New York law that a tort claim will not arise where plaintiff is essentially seeking enforcement of the bargain.") (citation omitted). Put another way, "[t]o sustain a conversion claim, a plaintiff must allege acts that constitute unlawful or wrongful behavior separate from a violation of contractual rights." *Elma RT v. Landesmann Int'l Mktg. Corp.*, No. 98 CIV. 3662 LMM, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000); *Citadel Mgmt., Inc.*, 123 F. Supp. 2d at 148 (same). For example, a defendant may be liable for a tort where it breached a duty of reasonable care distinct from its contractual obligations; where it engaged in tortious conduct separate from its failure to fulfill contractual duties; where it fraudulently induced the plaintiff to enter into a contract; or where it engages in conduct outside the contract that is intended to defeat the contract. *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995) (collecting cases). Thus, "[w]here a party is merely seeking to enforce its bargain, a tort claim will not lie."

Most of the allegations in this case all stem from Defendants' failure to honor oral agreements with Plaintiff rather than unique tortious conduct. Plaintiff relying on *Moses* counters that Defendants' "continued retention of the payments collected from [Plaintiff] without

authorization and in defiance of [P]laintiff's superior right of ownership is sufficient to establish conversion as an action distinct from any breach of contract claim." Pl.'s Br. 19, ECF No. 67; 360 F. Supp. 2d at 542. But, *Moses* is distinguishable.

In *Moses*, the plaintiff was a celebrity hair stylist who hired the defendant to handle all the logistical aspects of her business including collecting payments from clients and remitting those payments to the plaintiff. *Id.* at 538. Instead of remitting the money the plaintiff earned to the plaintiff, the defendant engaged in a pattern of deceptive practices to keep the money for itself including lying to the plaintiff regarding whether clients paid for the plaintiff's services and demanding payment from the plaintiff for "advances" the defendant claimed came from its own funds but were in fact drawn from funds to which the plaintiff was contractually entitled. *Id.* The court ultimately held that there was conversion distinct from any breach of contract because the defendant refused to pay the plaintiff the money to which she had a superior possessory right, even after she made a demand for it upon discovering the defendant's wrongdoing. *Id.* at 542; *AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832 (KMK), 2006 WL 1593884, at *4 (S.D.N.Y. June 7, 2006) (accord).

Unlike *Moses*, Defendants in the case at bar are not alleged to have engaged in any wrongful conduct separate and apart from their failure to adhere to the alleged oral agreements in connection with the Wheelock Property, the Storage Units, the Trump Baja Property, the Fifth Avenue Apartment, and King Penguin Properties. Without more, the facts, even in the light most favorable to Plaintiff, do not support a conversion claim. This also applies to the Fifth Avenue Apartment because even though Plaintiff's contract claim was insufficient, conversion claims that are duplicative of insufficient contract claims are still subject to dismissal. *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 306, 765 N.Y.S.2d 575, 590 (2003).

Hence, summary judgment is granted as to causes of action three, eleven, and fifteen; and Defendant Mikelic is granted summary judgment as to cause of action twenty and twenty-four.

The remaining conversion claims are cause of action twenty against Defendant KPP for conversion of the Storage Units, and cause of action twenty-three against all Defendants for conversion of the Penguin Opportunity Fund investment. As to the former, there is a genuine dispute of fact as to whether Plaintiff's money funded the Storage Units based on the Storage Unit Schedule, which in turn could provide a basis for supporting Plaintiff's conversion claim against KPP. As to the latter, Plaintiff's bank statements reflect that money was transferred to King Penguin Properties that totals the amount that Plaintiff alleges was invested in the Opportunity Fund. This raises triable issues of fact and thus, summary judgment is denied.

### IV. __Unjust Enrichment__

Relying on *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012), Defendants argue that they are entitled to summary judgment on Plaintiff's unjust enrichment claims that are duplicative of Plaintiff's breach of contract claims. The Court concurs and grants Defendants summary judgment as to Plaintiff's fourth, twelfth, sixteenth, and nineteenth causes of action. In *Corsello*, the Court of Appeals held that "unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract . . . circumstances create an equitable obligation running from the defendant to the plaintiff." *Id*. The court further clarified that "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim" but is available where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id*.

Plaintiff has not shown that the circumstances in this case create an equitable obligation that runs from Defendants to Plaintiff. The conduct for which Plaintiff asserts resulted in Defendants' unjust enrichment stem from Defendants' alleged failure to abide by an oral agreement, i.e., a breach of contract. There is no question that Plaintiff's unjust enrichment claims are duplicative and summary judgment is appropriate. In response, Plaintiff asserts that "'where there is a bona fide dispute as to the existence of a contract or the application of a contract to the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract.'" Pl.'s Br. 20, ECF No. 67; *see Old Salem Dev. Grp., Ltd. v. Twn. Of Fishkill*, 301 A.D.2d 639, 639 (2d Dep't 2003); *DePasquale v. Estate of DePasquale*, 44 A.D.3d 606, 607 (2007).

Although Plaintiff is correct generally, the facts in this case compel a different result. Here, the jury will either find that there were agreements that were violated, in which case Plaintiff's unjust enrichment claims would be duplicative; or the jury will find there were no agreements, in which case Plaintiff would not be entitled to any damages as there are no other facts or circumstances outlined in the Complaint that would give rise to an equitable obligation. *Cf. Old Salem Dev. Grp., Ltd.*, 301 A.D.2d at 639 (maintaining unjust enrichment claim at the motion to dismiss stage where it was unclear whether the defendant assumed the obligations of a contract between the plaintiff and a nonparty). Therefore, summary judgment must be granted as to Plaintiff's fourth, twelfth, and sixteenth causes of action. Additionally, Defendant Mikelic is entitled to summary judgment as to the nineteenth cause of action for unjust enrichment for the storage units, but not Defendant KPP as there is no breach of contract claim alleged against KPP for the storage units.

On the other hand, summary judgment as to Plaintiff's twenty-second cause of action for unjust enrichment against all Defendants for Plaintiff's investment in the Opportunity Fund must be denied. Defendants argue that Plaintiff's cause of action is barred by N.Y. Limited Liability Company Law § 609(a), which states that "[n]either a member [nor a manager] of a limited liability company . . . is liable for any debts, obligations or liabilities of the limited liability company . . . whether arising in tort, contract or otherwise, solely by reason of being such member [or manager] . . . ." Plaintiff does not dispute the application of NY Limit Liab Co § 609; rather Plaintiff notes that the statute does not insulate members and managers of a limited liability company where they "'participated in the commission of a tort in furtherance of company business'"—in this case, conversion a la Plaintiff's twenty-third cause of action. Pl.'s Br. 21, ECF No. 67; *Kew Gardens Hills Apt. Owners, Inc. v. Horing Welikson & Rosen, P.C.*, 35 A.D.3d 383, 386 (2d Dep't 2006). As the Court has already held that the twenty-third cause of action raises a dispute of material fact, there is no basis for dismissing Plaintiff's twenty-second cause of action.

## V.     **Breach of Fiduciary Duty**

Defendants also seek summary judgment on Plaintiff's claim that Defendant Mikelic breached his fiduciary duties in connection with Plaintiff's investment in the Opportunity Fund. Defendants primarily argue that (1) no fiduciary duty existed between Plaintiff and Mikelic because he was not a member or manager of the Opportunity Fund; (2) even if he were, a member or manager of a limited liability company is not liable for that company's debts per NY Limit Liab Co § 609; and (3) a claim for breach of fiduciary duty does not arise when the alleged breach is a failure to perform under a contract. Plaintiffs counter that Mikelic had a 75% membership interest in KPP Managing Member, the Opportunity Fund's managing member, and

held himself out to investors such as Plaintiff as the Fund Manager, General Partner, and Managing Principal. This led Plaintiff to trust and rely on Mikelic to invest her money properly, making him a fiduciary. Pl.'s Br. 21-23, ECF No. 67.

To recover damages for breach of fiduciary duty under New York law, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Armentano v. Paraco Gas Corp.*, 90 A.D.3d 683, 684 (2d Dep't 2011) (quotation omitted). "A fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge . . . but an arms-length business relationship does not give rise to a fiduciary obligation." *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529 (2d Dep't 2001). Indeed, "[t]he fiduciary relationship must predate any alleged breach, and cannot arise based on plaintiff's subjective trust in a defendant." *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 CIV. 4362 PKC, 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) (citing *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355 (1st Dep't 2004)).

Additionally, "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *37 E. 50th St. Corp. v. Rest. Grp. Mgmt. Servs., L.L.C.*, 156 A.D.3d 569, 570 (N.Y. App. Div. 2017). Despite this, "to the extent that the Complaint's fiduciary duty claim is premised upon failure to perform under the agreed terms of a contract, the plaintiffs fail to state a claim under New York law." *Sheppard*, No. 11 CIV. 4362 PKC, 2012 WL 1890388, at *9 (citing *Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301, 302 (1st Dep't 2008) ("The breach of fiduciary duty claim was properly dismissed as the

agreement covers the precise subject matter of the alleged fiduciary duty.") (quotation marks and alterations omitted).

The Court holds that Plaintiff has not established that Mikelic was a fiduciary or that there was a breach of duty independent from a failure to perform under a contract. At the outset, the facts do not indicate that Mikelic was Plaintiff's fiduciary. In Plaintiff's deposition she stated that she met Mikelic four years prior to the investment at issue and that she learned he was successful in real estate from conversations with Olga. Decl. of Anthony R. Filosa Ex. C. 22:5-23, 28:14-21, ECF No. 60-3. These conversations (or the fact that he was her son-in-law) may have led Plaintiff to trust Mikelic, but Plaintiff's subjective trust in Defendant does not provide the basis for the Court to find a fiduciary relationship existed prior to the alleged breach. *Sheppard*, No. 11 CIV. 4362 PKC, 2012 WL 1890388, at *9; *see also Castellotti v. Free*, 138 A.D.3d 198, 209 (N.Y. App. Div. 2016) (holding that the mere fact of a familial relationship by itself does not establish a fiduciary relationship).

But, even if Mikelic were a fiduciary, the alleged breach was merely a failure to abide to perform under the Operating Agreement and not a distinct breach of duty. In fac, the case *Plaintiff* cites in support of her argument against summary judgment serves to illustrate the point. In *37 E. 50th St. Corp. v. Rest. Grp. Mgmt. Servs.*, L.L.C., 156 A.D.3d 569, 570–71 (N.Y. App. Div. 2017) the First Department held that there were triable issues of fact as to whether the defendant breached its fiduciary duties because prior to the disputed agreement in 2011 the plaintiff relied on the defendant for 15 years to "manage its business . . . without personal bias or conflict of interest," but then the defendant allegedly "created a company without plaintiff's consent and then intentionally entered into a lease in contravention of the parties' 2011 agreement." Put another way, the facts raised triable issues as to whether the defendant

intentionally improperly performed the contract in connection with other acts for the defendant's own benefit. *Id.* (citing *Albemarle Theatre v Bayberry Realty Corp.*, 27 AD2d 172, 177 (1st Dept 1967)). Defendant Mikelic's alleged failure to distribute profits earned on Plaintiff's alleged investment per the Fund's Operating Agreement is materially different from the defendant in *37 E. 50th St. Corp.* abusing its relationship of trust and acting in its own self-interest to the detriment of the plaintiff. Therefore, summary judgment is granted as to Plaintiff's twenty-first cause of action.

## VI.     <u>Accounting, Attorney's Fees, and Punitive Damages</u>

In its opposition, Plaintiff noted in a footnote that she will no longer seek an accounting or attorneys' fees.[4] Pl.'s Br. 9 n.8, ECF No. 67. As such, the Court will grant summary judgment to Defendants as to Plaintiff's twenty-sixth cause of action and for Plaintiff's prayer for attorneys' fees. Plaintiff, however, still seeks punitive damages for its conversion claims, which the Court will allow to proceed to trial. *Id.*; *see Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp. 3d 193, 198 (S.D.N.Y. 2018) ("Punitive damages are available for conversion "where circumstances show that the conversion was accomplished with malice, insult, reckless and willful disregard for plaintiff's rights . . . .").

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 59, is **GRANTED** in part and **DENIED** in part. Defendant is entitled to summary judgment as to

---

[4] Even if Plaintiff sought an accounting or attorneys' fees, they are foreclosed under prevailing law given the facts of this case. *See, e.g., Klonick v. Equitable Life Assur. Soc. of U. S.*, 77 Misc. 2d 246, 247 (Sup. Ct. 1974) ("[A]n action for an accounting will not lie in the absence of a fiduciary or trust relationship."); *Hallinan v. Republic Bank & Tr. Co.*, 519 F. Supp. 2d 340, 354 (S.D.N.Y. 2007), *aff'd*, 306 F. App'x 626 (2d Cir. 2009) (Under New York law, unless a statute or contractual provision states otherwise "[t]here is no right to an award of attorney's fees on an ordinary claim of breach of contract.") (citation omitted).

causes of action three through nine, eleven, twelve, fifteen, sixteen, twenty-one, twenty-four, and twenty-six; Defendant Mikelic is also granted summary judgment as to causes of action nineteen and twenty; and Penguin Opportunity Fund II is granted summary judgment as to causes of action twenty-two and twenty-three.

**SO ORDERED.**

**Dated: March 28, 2019**
      **New York, New York**

                                              **ANDREW L. CARTER, JR.**
                                              **United States District Judge**